### No. 26992

**The Greeley Police Union, and Donald O'Leary, President of The Greeley Police Union v. The City Council of Greeley, Colorado, and George W. Hall, Councilman, Gil House, Councilman, Wayne A. Sodman, Councilman, James R. Smith, Councilman, Gid W. Gates, Councilman, Martha Benavidez, Councilwoman, Richard Perchlik, Mayor, and Jack Huffman, City Manager**

(553 P.2d 790)

Decided August 23, 1976. Rehearing denied September 7, 1976. Modification denied September 13, 1976.

George T. Ashen, for plaintiffs-appellants.

William E. Shade, City Attorney; Holland & Hart, Warren L. Tomlinson, James E. Hartley, for defendants-appellees.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Joseph N. de Raismes, First Assistant, Louis L. Kelley, Assistant, John Kezer, Assistant, for Division of Labor, Department of Labor and Employment, State of Colorado, amicus curiae.

Leland M. Coulter, Richard Kaufman, for City of Aurora, Colorado, a Municipal Corporation, amicus curiae.

Susan K. Griffiths, for Colorado Municipal League, amicus curiae.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

The principal issue in this appeal is the validity of a Greeley (the city) city charter amendment providing collective bargaining and compulsory, binding arbitration of all unresolved municipal-police union labor disputes arising from collective bargaining.

This action was originally commenced by plaintiffs-appellants Greeley Police Union (the union). The union sought to compel the city to submit to an election an initiative measure amending the Greeley City Charter. The city argued that the proposed amendment was unconstitutional; the district court agreed and dismissed the complaint. The union appealed to this court. Subsequently we decided *Aurora v. Dilley*, 186 Colo. 222, 526 P.2d 657 (1974), which held that the constitutionality of a proposed initiated city charter amendment, similar to the subject amendment, providing for collective bargaining and compulsory arbitration for city firemen could not be resolved prior to the election. Accordingly, the parties to this action stipulated, and this court so ordered, that the case be remanded to the district court for further proceedings pending an election on the proposed charter amendment.

The Greeley electorate thereafter approved the amendment, which provides, *inter alia*, for the city to bargain in good faith with respect to wages, rates of pay, hours, grievance procedures, working conditions and all other terms and conditions of employment with a union selected by a majority of Greeley police officers. All matters incapable of being resolved by negotiation are to be submitted to an arbitrator whose ruling is binding on both the city and the union.

The city filed a motion seeking a redetermination of the amendment's validity. The court again ruled that the charter provisions for binding arbitration constituted an unlawful delegation of legislative power. Furthermore, these provisions were deemed so central to the amendment that they could not be severed. Accordingly, the entire amendment was declared invalid. Again, the union appealed. We affirm in part and reverse in part.

I.

The city asserts that the charter amendment involves a matter of statewide concern which is not properly subject to municipal regulation. We do not accept that argument as valid. *Both* state and local interests are involved. See *Huff v. Mayor of Colorado Springs*, 182 Colo. 108, 512 P.2d 632 (1973). The city may legislate on such matters in the absence of conflicting statutory provisions. See *Vela v. People*, 174 Colo. 465, 484 P.2d 1204 (1971), and *Woolverton v. Denver*, 146 Colo. 247, 361 P.2d 982 (1961).

■ The city also argues that the charter authorizes what state law forbids and therefore a conflict exists, citing *Ray v. Denver*, 109 Colo. 74, 121 P.2d 886 (1942). Again, this argument has no merit. There is no state legislation concerning the rights of public employees to engage in collective bargaining. The Colorado Labor Peace Act, with an exception not applicable herein, excludes the state or any political subdivision thereof. Section 8-3-104(12), C.R.S. 1973.

The trial court ruled that the amendment provisions concerning compulsory binding arbitration constitute an unlawful delegation of legislative power. This is an issue of first impression in Colorado. We are persuaded that this view is correct. The charter amendment provides that in the event that the parties are unable to reach an agreement all unresolved issues must be submitted to arbitration in the following manner:

Following notification, the American Arbitration Association submits a list of five names to the parties. Each party may cross off two names from the list and then number the remaining names in order of preference. The Arbitration Association then selects a single person who is granted the authority to resolve all disputed issues. The arbitrator's decision is binding upon the parties.

A determination of the validity of legislatively provided binding arbitration was left expressly unanswered in *Fellows v. LaTronica*, 151 Colo. 300, 377 P.2d 547 (1962). The collective bargaining agreement in *Littleton Education Association v. Arapahoe County School District*, 191 Colo. 411, 553 P.2d 793, did not contain binding arbitration features. The board of education was not required to surrender any of its ultimate decision-making authority. In that opinion we limited the holding of *Fellows, supra*, to its facts: a public employer cannot be forced to arbitrate disputes arising from a collective bargaining agreement.

■ A contrary holding, in our view, would seriously conflict with basic tenets of representative government. Fundamental among these tenets is the precept that officials engaged in governmental decision-making (*e.g.,* setting budgets, salaries, and other terms and conditions of public employment) must be accountable to the citizens they represent. Binding arbitration removes these decisions from the aegis of elected representatives, placing them in the hands of an outside person who has no accountability to the public. *Dearborn Fire Fighters Union v. City of Dearborn*, 394 Mich. 229, 231 N.W.2d 226 (1975), opinion by MR. Justice Levin.

The prohibition against delegating legislative power to politically unaccountable persons is mandated by *Colo. Const.*, Art. XXI, Sec. 4, which states, in part:

"Every person having authority to exercise or exercising any public or governmental duty, power or function, shall be an elective officer, or one appointed, drawn or designated in accordance with law by an elective officer or officers, or by some board, commission, person or persons legally

appointed by an elective officer or officers, each of which said elective officers shall be subject to the recall provision of this constitution; . . .
"Nothing herein contained shall be construed as affecting or limiting the present or future powers of cities and counties or cities having charters adopted under the authority given by the constitution, except as in the last three preceding paragraphs expressed."
as well as Art. V, Sec. 35:
"The general assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever."

While certain jurisdictions have upheld such procedures (*e.g.*, *City of Warwick v. Warwick Regular Firemen's Association*, 106 R.I. 109, 256 A.2d 206 (1969), and *State v. Laramie*, 437 P.2d 295 (Wyo. 1968)), we are not persuaded by the reasoning of those opinions. For example, the Rhode Island Supreme Court avoided the delegation problem by concluding that the arbitrators become "public officers." The court's analysis has been criticized as "a reason-free debate over labels" and countenancing "the syllogism that all enactments of the Legislature are constitutional because the Legislature cannot pass an unconstitutional law." *Dearborn Fire Fighters Union, supra.*

We are convinced that the sounder view is expressed by those jurisdictions which have concluded that binding arbitration of public sector labor disputes is not constitutionally permissible. *City of Sioux Falls v. Sioux Falls Firefighters*, _____ S.D._____, 234 N.W.2d 35 (1975), and *State v. Johnson*, 46 Wash.2d 114, 278 P.2d 662 (1955).

## II.

■ Finally, we disapprove the ruling of the trial court that the amendment is not severable. A principal intention of the charter amendment was to provide police officers with the tool of collective bargaining. Even if the binding arbitration provisions are unlawful, we hold the intent of the amendment sponsors that the remaining portions should be preserved is stated within the amendment which contains a specific severability clause. Further, we conclude that the remaining valid portions of the amendment are complete in themselves and can be given full legal effect. *Shroyer v. Sokol*, 191 Colo. 32, 550 P.2d 309 (1976); *Covell v. Douglas*, 179 Colo. 443, 501 P.2d 1047 (1972).

The portion of the judgment holding that binding arbitration is an unconstitutional delegation of legislative authority is affirmed, but we reverse the court's declaration that the charter is wholly void and thus remand the cause to the trial court to order reinstatement of the charter amendment with the proviso for binding arbitration excised therefrom.

MR. CHIEF JUSTICE PRINGLE concurs in part and dissents in part.

MR. JUSTICE LEE does not participate.

MR. CHIEF JUSTICE PRINGLE concurring in part and dissenting in part:

I concur in that portion of the majority opinion which upholds the charter amendment with respect to compulsory collective bargaining.

I respectfully dissent from that portion of the majority opinion which strikes down the provisions in the charter amendment providing for compulsory arbitration. In my view, it is a matter of local concern as to how a home rule city will determine its wages for its policemen. It is true that compulsory arbitration may place in the hands of someone not a city official the determination of what compensation should be made to police officers; but the city of Greeley is a home rule city and when its citizens, in their organic document, declared by their vote that it is their intention that such is the manner by which they wish compensation to be determined, then they have the right to do so.

The power, in the last analysis, in any government entity rests with the people. I would uphold the compulsory arbitration clause as a valid exercise of the peoples' right in a home rule city.